COMUNIDAD RELIGIOSA CATÓLICA, ETC., Plaintiff and Appellant *v.* NEFTALÍ REYES ARROYO, Defendant and Appellee.

No. 8859. Argued July 23, 1942.—Decided November 30, 1942.
Rehearing Denied July 28, 1944.

474

*José Bonet* for appellant. *R. Castro Fernández* and *Enrique Segarra, Jr.*, for appellee.

Mr. Justice Snyder delivered the opinion of the court.

This a suit (*a*) to declare null the cancellation by the registrar of property of a *censo* encumbering certain real property, (*b*) to reinscribe the said *censo*, and (*c*) to collect the *réditos* which had not been paid since the cancellation of the *censo*. The plaintiff has appealed from a judgment

of the district court which sustained a demurrer to the complaint on the ground that the facts alleged did not constitute a cause of action.

The facts herein are as follows: In 1814 various *censos* were constituted on a house located in San Juan. One of these was for 300 *pesos* in favor of the *Madres Carmelitas*. This latter *censo* was registered in the books of the old "Office of Mortgages", and each time the property was transferred the various purchasers recognized the existence of this *censo* and deducted its value from the purchase price. The property was acquired in that manner by Josefa María Borges in 1891, who in turn transferred it under the same circumstances to Manuela Fernández Noell in 1894. When these last two documents of purchase were recorded in the modern books of the registry,[1] the *censo* in question was mentioned but there was no express constitution of it as an encumbrance. In the same way, when Manuela Fernández Noell mortgaged the property in 1915, the existence of this *censo* was only mentioned in the mortgage deed and in the recordation thereof.

Manuela Fernández Noell paid the annual 5 per cent on the capital of the *censo* as provided therein until 1929. In that year she requested and obtained the cancellation by the registrar of the said mention of a *censo* pursuant to Act No. 12, Laws of Puerto Rico, 1923 (Special Session), and Act No. 12, Laws of Puerto Rico, 1924 (Special Session). In 1934 Manuela Fernández Noell sold the property herein to Neftalí Reyes Arroyo. The deed of purchase contained no recital of the existence of this *censo*, and was recorded free and clear of any encumbrances.

The new Mortgage Law and its Regulations went into effect in 1893. Article 397 thereof reads in part as follows:

[1] In conformity with §456 of the Regulations as applied to the Mortgage Law and the Regulations for its execution, the old books are those bearing a date prior to May 1, 1880, and the modern books those subsequent to that date.

"The records contained in the books of the registry on file in the offices of *Contadurías, Anotadurías,* or *Receptorías* of mortgages, shall have the effects they would have under the laws in force prior to the date the Mortgage Law went into effect, in the respective islands beyond the seas, if said records shall have been or are transferred to the modern books of the registry.

"The records of rent charges, mortgages, liens and any other class of property rights, contained in the said books existing in the *Contadurías, Anotadurías* or *Redeptorías* of mortgages, must be transferred to the modern registry within the period of one year from the date of the promulgation of this law. Such transfer must be made at the instance of a party.

"If the transfer should be requested in a petition addressed to the registrar within said period, the effects of the transfer shall be retroactive to the date of the entry of record in the old books, such fact being stated in the new books. If the petition for the transfer should be made after said date, it shall not operate to the prejudice of third persons. . . ."

The correspondig Article of the Regulations reads in part as follows:

"Art. 449. In order that the records of ownership contained in the old books of the registry referred to in the first paragaph of article 397 of the law, may produce as to third persons the effects prescribed by the laws in force at the time of making such records, it is essential that they be transferred to the new books. Application for this transfer must be made in writing, in accordance with the procedure provided for in the following articles, and the application may be made at any time. If the transfer should not be made, they shall continue to produce their effects, although not against third persons, in view of the provisions of said first paragraph of article 397, but only between the persons interested and even though they lack some of the requisites which articles 9 to 13 of the law require, under the penalty of nullity, as provided by the last paragraph of said article 397.

"Records other than records of ownership referred to in the second paragraph of article 397 of the law, in order to prejudice third persons must be transferred within a period of one year from the date of the promulgation of the law; aplication for this transfer shall be made in writing within the said period subject to the following articles, producing all its effects from the date of the entry

in the old books, even though the transfer be made later, provided the application therefor shall have been filed within the year referred· to. . . .''

In accordance with these Articles, the protection flowing from recordation in the old books could be retained provided such entries were transferred to the modern books of the registry. And pending the consummation of such transfers, any mention in the modern books, when recording new transactions, only bound parties who in their contracts expressly recognized the · existence of the encumbrances involved. Until they were duly recorded in the modern registry, these contracts therefore created only a personal obligation. And if the transfer was not effected, the mention thereof could not bind those who, after the law went into effect, acquired the property involved without recognizing the existence of such an encumbrance. This, of course, had no effect on the continued existence of a personal obligation on the part of those who had expressly acknowledged it.

 Morell, in commenting on these Articles of the Mortgage Law and Regulations, characterizes as a *tercero* (third· party) one who acquires real property under the aforesaid circumstances. He makes the following comment on §397, paragraph 3:

"Pursuant to this paragraph, the old entries whose transfer is not sought within the term of one year, do not prejudice a third party so long as they are not transferred; but they are not stricken out, they do not disappear, because the transfer may be made at any time at the instance of a party; the only thing that happens— the Article provides—is that if they are transferred after the expiration of a year, they do not prejudice a third party. The Article should and does provide that the entries only prejudice third parties after the date of transfer. · Otherwise the transfer would be useless.

"The reform proposal from which these provisions have been adopted would seem to say that the present owner of the property could not be considered as a third party. As the law is silent, he who ·did not take part in the transaction or in the recorded contract must be deemed to be a third party. ·If the owner continues to be

the same person who was owner at the time in which the encumbrance was constituted, acknowledged, modified or recorded, he could not be a third party; *but if the present owner is a different person, he must be treated as a third party.*" (Italics ours.)[2]

He also comments on §449 of the Regulations as follows:

"The record of title made in the old Registry may be transferred to the modern Registry at any time. They do not prejudice third parties so long as they are not transferred. Once the transfer is made, would they only prejudice third parties after the date of the transfer, or do they take effect in that manner as of the date of the old record? As nobody knows whether or not they will be transferred, and if such transfer is not made these records only take effect as between the interested parties, *it is probable and must be assumed that third parties who have acquired any right on the farm since the publication of the Act, until the transfer is made, should not be prejudiced.*" (Italics ours.)[3]

The situation therefore was that transfer could be effected even after the year had elapsed, but that it would affect only subsequent purchasers, who ha dnot acknowledged the existence of the encumbrance, from the date the transfer was actually made. Nevertheless, the lack of a real terminal date for transfer to the modern books was bound to create a state of uncertainty in the Registry. The Legislature therefore enacted Acts Nos. 12 in 1923 and in 1924, the pertinent parts of which are copied in the margin.[4]

---

[2] Morell's *Legislación Hipotecaria de Ultramar,* Madrid, 1893, p. 112.

[3] Morell's *Legislación Hipotecaria de Ultramar,* Madrid, 1893, p. 260.

[4] Act No. 12 of 1923 (Spec. Sess. Laws, p. 36) provided in part as follows:

"An Act Regulating the Procedure for the Cancellation in the Registry of Property of Liens and Entries of Chattels real, and for the Extinction of Certain Records and Annotations on Account of Lapse of Time.

"Be it enacted by the Legislature of Porto Rico:

"Section 1.—On written application of a party or of the representative of such party, authenticated before a notary, the Registrars of Property shall proceed to cancel in the respective register:

"(a) Mentions of mortgages, annuities (*censos*), and of other rights covering the payment of money or deferred payment of the price of purchase and sale of real property, whether recorded in the old or modern books of the registry, where more than twenty (20) years have elapsed since the entry of the respective mentions, when the interested party does not request the entry

The terms of these Acts reflect the purpose of the Legislature to provide for the cancellation of those mentions which exist either in the old or in the modern books if twenty years have elapsed[5] and if the necessary steps to make their rights effective have not been taken by the interested parties.

As we have seen, the Legislature, in enacting §§397 and 449, did not establish a fixed term for the definitive transfer of the entries from the old to the modern books after which no such transfer could be effected. Consequently, under those Articles, transfer could be had even after the year had elapsed. This was an unfortunate situation, in view of the fact that real property which on the modern books was apparently free of encumbrances could thus be encumbered and thereby affect future purchasers or prejudice the use of the property for security purposes. When examined in the light of these circumstances, it is plain that the new enactments, added to the Mortgage Law as §§388 *a*, 388 *b*, and

of the right mentioned, within one year after the date on which this Act takes effect, or when such party, within said term, brings suit claiming his rights, and enters them in the registry.''

This was amended by Act No. 12 of 1924 (Laws of 1924, p. 108) to read as follows:

''(*a*) Mentions of mortgages or of deferred payments of the price of purchase and sale of real property, whether recorded in the old or new books of the registry, where more than twenty years have elapsed since the respective mention was made and when the interested party has not requested the entry of the mentioned right within the term of one year from August 29, 1923, or has not brought suit to claim his right and entered such suit in the registry. Mentions of annuities (*censos*) shall not be cancelled in the old or new books of the registry when the interested party requests a transfer of the entry or mention of the right mentioned to the modern books of the registry within a term of two years counting from the day on which this Act takes effect, or within said term brings suit claiming his right and enters said suit in the registry; *Provided, further,* That on written request of a party or his representative, authenticated before a notary, said registrars of property shall also cancel in the respective registers such other mentions of rights for the payment of money as do not refer to the deferred payment of the purchase and sale of real property, provided no term is fixed or no indication is made in the title causing the mention that a lien is constituted on said real property, if over five years have elapsed.''

[5] The twenty year begin to run from the date of the first mention. (*Hernáiz, Targa & Co.* v. *Registrar,* 49 P.R.R. 643).

388 *c*, were not simply a reenactment of what had been provided in §§397 and 449. This would have been unnecessary, for as we have seen those Articles did not establish any terminal date within which the transfer must be effected. It is therefore obvious that one of the purposes of the Acts of 1923 and 1924 was to fix a definite term within which transfer could be effected. And if within that term no such request is made, the protection of recordation is waived, although the personal obligation betwéen the original contracting parties continues to subsist. Once the term provided in the 1923 and 1924 Acts expired, any interested party could request the Registrar pursuant thereto to cancel the mentions affecting his property. That is exactly what took place here. And the defendant, having acquired the property after cancellation of the mention had been effected in the Registry and without acknowledging its existence, was a *tercero* (third party).[6]

The judgment of the district court sustaining the demurrer to the complaint will be affirmed.

---

MR. JUSTICE SNYDER delivered the opinion of the court.

In arguing its motion for reconsideration herein, the appellant makes two points: (1) that our opinion is erroneous in referring to the personal obligation of the owner of the property on which a *censo* is constituted; and (2) that in the instant case the mention of the *censo* in favor of the appellant could not be canceled in the modern books because it involves an express mention recognized by all the owners of the encumbered property prior to Neftalí Reyes.

■ The appellant is correct in its first contention. As Manresa points out, a *censo* is a real right inseparable from

---

[6] *Comunidad Religiosa, etc.* v. *Fernández,* 61 P.R.R. 129, is distinguishable, as in that case the *censo* was duly recorded, and not merely mentioned.

the object upon which it is constituted. It has no effect on the person. It is for that reason that, if the property is transferred to a third person, the transferrer is free of any obligation on the *censo,* and the charge passes to the grantee as owner or possessor of the encumbered property. The only personal obligation imposed by law on the owner of the property is to make the annual payments that became due while he was owner, even though the claim therefor is made after he has ceased as such.

 We do not agree with the second contention of the appellant in his motion for reconsideration. Act No. 12 of August 29, 1923, has as its purpose, as its title indicates, to provide a "procedure for the cancellation . . . of liens and entries of chattels real, and for the extinction of certain records and annotations on account of lapse of time." Act No. 12 of June 25 of 1924, which amended paragraph (*a*) of §1 of the 1923 Act, has the same purpose. No distinction is established in either of them between express mentions and mentions *de officio.*

Section 1, paragraph (*a*), as amended by the Act of June 25, 1924, referring to mentions of *censos,* provides that they shall not be canceled, in the old or new books of the registry when the interested party requests a transfer of the entry on mention of the right mentioned to the modern books of the registry within a term of two years, counting from the day on which the said Act of June 25 of 1924 takes effect, or within the same period files suit claiming his right and enters said suit in the registry. Cuba, where the Mortgage Law is the same as ours, except for a few amendments in both places, in dealing with cancellation of mentions, specifically exempted those which appear recognized in the title documents by the interested parties—in a word, in Cuba express mentions are excepted from a provision for cancellation similar to that found herein. But we find no such exceptions in our acts. Under Act No. 12 of 1923 the appel-

lant had a year from the effective date thereof to request the recordation of the right mentioned or to file suit claiming his right together with an entry thereof in the registry. By Act No. 12 of 1924 this period was extended to two years. Nevertheless, this right was not exercised by the appellant, and the mention, as we have seen, was canceled.

Since the first error assigned on reconsideration does not affect the result herein, and since the second alleged error does not exist, the motion for reconsideration will be denied.